830 F.2d 541
 LEARNING WORKS, INC., a Maryland Corporation, Plaintiff-Appellant,
v.
THE LEARNING ANNEX, INC., a New York Corporation, t/a The
Learning Annex; The Learning Annex of Washington,
D.C., Inc., t/a Open University (of
Washington), Defendants-Appellees.
 No. 87-1550.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 29, 1987.
Decided Oct. 7, 1987.
 
 Donald H. Hadley (Hadley & House, Bethesda, Md., on brief), for plaintiff-appellant.
 Robert Lee Bodansky (Feldman, Bodansky & Feldman, Washington, D.C., on brief), for defendants-appellees.
 Before PHILLIPS, ERVIN, and WILKINSON, Circuit Judges.
 ERVIN, Circuit Judge:
 
 
 1
 Plaintiff Learning Works, Inc. ("Learning Works") appeals from the dismissal of its amended complaint under Fed.R.Civ.P. 12(b)(6) in this case involving claims for fraud and breach of contract. Because we find that the amended complaint failed to state any claim upon which relief could be granted, we affirm the judgment of the district court.
 
 
 2
 Learning Works is a Maryland corporation that provides adult education classes in Maryland and Washington, D.C. The defendants, Learning Annex, Inc. of New York and Learning Annex, Inc. of Washington, D.C. (hereinafter collectively referred to as "Learning Annex"), are also engaged in the business of providing adult education.
 
 
 3
 Learning Works's amended complaint alleged that it had entered into a contract with Learning Annex, pursuant to which Learning Annex was to purchase the assets of Learning Works. The amended complaint alleged that Learning Annex had breached the contract by refusing to purchase the assets of Learning Works. In addition, it alleged a claim for fraud based on the same facts as those giving rise to the breach of contract claim. Learning Works sought damages and specific performance of its alleged contract with Learning Annex.
 
 
 4
 The district court dismissed the breach of contract claim on the ground that Learning Works had failed to allege the existence of any enforceable contract for the sale of its assets. The court concluded that the writings exchanged by the parties could not have formed a contract, and that any alleged oral agreement between the parties would be unenforceable under the applicable statute of frauds. Our review of the amended complaint persuades us that the district court's conclusions were correct.
 
 
 5
 In the course of their negotiations concerning the proposed sale of the assets of Learning Works, the parties in this case exchanged two letters. The first was a letter from Learning Annex to Learning Works, in which Learning Annex offered to purchase the assets of Learning Works on any one of three bases. One of the three alternative methods of payment proposed by Learning Annex was "[a] cash payment of $48,000 payable $27,000 on closing and $21,000 payable over three (3) years with bank guarantees." Shortly after receiving Learning Annex's offer, Learning Works replied by letter as follows:
 
 
 6
 To confirm our telephone discussion of this date, Learning Works, Inc., accepts the offer of the Learning Annex to acquire the assets of Learning Works on the basis set forth in your letter of March 19, 1986, viz., a cash payment of $48,000.00 payable $27,000.00 on closing and $21,000.00 payable over three (3) years with bank guarantees. Your offer to pay the $21,000.00 deferred portion of the $48,000.00 purchase price in three annual installments with interest at 8.06% (the federal applicable rate) is accepted.
 
 
 7
 These two letters are the only written indicia of contract formation.
 
 
 8
 We agree with the district court that the parties failed to form a contract by the exchange of these letters, because Learning Works's letter to Learning Annex did not constitute an acceptance of Learning Annex's offer. Maryland law, which applies in this case, requires unqualified acceptance of an offer before a contract can be formed. If a purported acceptance varies from the terms of the offer, then it does not operate as an acceptance, but rather as a rejection of the offer and a counteroffer. See, e.g., Fraley v. Null, Inc., 244 Md. 567, 224 A.2d 448, 452 (1966); Post v. Gillespie, 219 Md. 378, 149 A.2d 391, 396 (1959).
 
 
 9
 In this case, Learning Works's purported acceptance contained a term not found in Learning Annex's offer: a term for payment of interest by Learning Annex on the three annual installments at the rate of 8.06%. Because this additional term varied the purported acceptance from the terms of the offer, the district court correctly concluded that Learning Works's letter did not constitute an acceptance. Rather, the letter operated as a rejection of Learning Annex's offer and a counteroffer. The amended complaint does not allege that Learning Annex ever accepted Learning Works's counteroffer. Under these circumstances, we must agree with the district court that Learning Works has failed to allege the existence of an enforceable contract arising from the parties' exchange of correspondence.
 
 
 10
 Learning Works contends, however, that the district court erred in dismissing the breach of contract claim, because the amended complaint sufficiently alleged the existence of an enforceable oral contract for the sale of Learning Works's assets. Learning Works claims that after Learning Annex had made its written offer to purchase, Learning Annex orally modified its offer to include the term for payment of interest on the annual installments. Learning Works maintains that it accepted this modified offer orally and then confirmed its acceptance with the letter quoted above. According to Learning Works, the terms of its oral agreement with Learning Annex are reflected in its letter to Learning Annex.
 
 
 11
 The district court ruled that Learning Works's allegations concerning an oral contract with Learning Annex would not preclude dismissal of the amended complaint, because any such oral contract would be unenforceable under the statute of frauds set forth at Md.Ann.Code art. 39C, Sec. 1 (1986). This section provides in relevant part:
 
 No action may be brought:
 
 12
 * * *
 
 
 13
 (3) Upon any agreement that is not to be performed within the space of one year from the making thereof;
 
 
 14
 Unless the contract or agreement upon which the action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged, or some other person lawfully authorized by him.
 
 
 15
 Id. As the Maryland Court of Appeals has observed,
 
 
 16
 the "one year clause" of the Maryland Statute of Frauds does not bar collection of damages for breach of an oral contract absent an express and specific provision in that contract that it was not to be performed within one year or a clear demonstration by its terms that it was not or could not be so performed.
 
 
 17
 General Federal Construction, Inc. v. James A. Federline, Inc., 283 Md. 691, 393 A.2d 188, 189 (1978).
 
 
 18
 Put otherwise, there are two sets of circumstances under which the one-year provision of the Statute of Frauds will bar a claim. One occurs when the parties " 'expressly and specifically' agreed that their oral contracts were not to be performed within one year." ... The other occurs when it is impossible by the terms of the contract for it to be performed fully within one year.
 
 
 19
 Griffith v. One Investment Plaza Associates, 62 Md.App. 1, 488 A.2d 182, 184 (1985).
 
 
 20
 We think that the district court was correct in concluding that enforcement of the alleged oral contract in this case would be barred by the one-year provision of the Maryland statute of frauds. There was no written memorandum of the alleged agreement signed by Learning Annex, the party to be charged. The only written evidence of the terms of the alleged contract is the letter of Learning Works confirming its purported acceptance of Learning Annex's offer to purchase. This letter, however, demonstrates that the parties had expressly and specifically agreed that their contract was not to be performed within one year of its making. According to Learning Works's letter, the parties had agreed that Learning Annex was to pay for the assets it purchased over a three-year period. Because the parties agreed that full performance of their contract was not to be rendered within one year, enforcement of the alleged oral agreement would be barred by the one-year provision of the Maryland statute of frauds.
 
 
 21
 Learning Works argues, however, that it is entitled to specific enforcement of the alleged oral contract under the equitable doctrines of part performance and estoppel. Although application of these doctrines can, under some circumstances, remove the bar of the statute of frauds, we conclude that Learning Works has failed to allege facts demonstrating that it is entitled to relief under either doctrine.
 
 
 22
 Under Maryland law, part performance of an oral contract can remove the bar of the statute of frauds if the part performance consists of acts that would not have been done but for the existence of the contract. See, e.g., Serio v. Von Nordek, 189 Md. 388, 56 A.2d 41, 42 (1947). To eliminate the bar of the statute of frauds, the part performance must relate to and be unequivocal evidence of the agreement to be enforced. See, e.g., Beall v. Beall, 291 Md. 224, 434 A.2d 1015, 1019 (1981).
 
 
 23
 In this case, Learning Works has failed to allege that it rendered part performance of its obligations under the purported contract with Learning Annex. The amended complaint contains only the very general allegation that Learning Works ceased its business operations and incurred various unspecified expenses in reliance on the alleged contract. Learning Works does not allege that the contract required it to cease its operations or incur any expenses. Under these circumstances, we cannot say that Learning Works has alleged part performance of the contract sufficient to remove the bar of the statute of frauds.
 
 
 24
 Learning Works fares no better with its estoppel argument. Under Maryland law, "[c]onduct sufficient to create an equitable estoppel can bar one from asserting the defense of the statute of frauds to an oral contract otherwise within its provisions." Kline v. Lightman, 243 Md. 460, 221 A.2d 675, 684 (1966). An equitable estoppel may arise when there is voluntary conduct or a voluntary representation by the party to be estopped which induces detrimental reliance on the part of the party asserting the estoppel. See Knill v. Knill, 306 Md. 527, 510 A.2d 546, 550 (1986). In order to claim the benefit of an equitable estoppel, the party asserting the estoppel must have acted in good faith and with reasonable diligence. See Chesapeake Homes, Inc. v. McGrath, 249 Md. 480, 240 A.2d 245, 250 (1968). "Where the one who claims the aid of the doctrine of estoppel has not acted with [reasonable] diligence, equity will afford him no relief." Dixon v. Process Corp., 38 Md.App. 644, 382 A.2d 893, 901 (1978).
 
 
 25
 Learning Works cannot prevail on its estoppel argument, because it has failed to allege that it reasonably relied on Learning Annex's representations. The amended complaint alleges only that Learning Annex represented that it would purchase the assets of Learning Works, and that Learning Works relied on this representation to its detriment by ceasing its business operations. Learning Works alleges no facts to support its conclusory allegation that the cessation of its operations resulted from reasonable reliance upon the representations of Learning Annex. In the absence of any indication in the amended complaint that Learning Works acted with reasonable diligence in ceasing its business operations, we must conclude that Learning Works has not sufficiently alleged the elements of an equitable estoppel that would remove the bar of the statute of frauds.
 
 
 26
 We next consider the propriety of the district court's dismissal of Learning Works's fraud claim. In its amended complaint, Learning Works alleged that Learning Annex had acted fraudulently in promising to purchase the assets of Learning Works, because Learning Annex never had any intention of fulfilling its promise. According to Learning Works, the purpose of Learning Annex's false promise was to induce Learning Works to cease its business operations. Learning Works alleges that it relied on Learning Annex's fraudulent misrepresentation in ceasing its operations. As alleged in the amended complaint, Learning Annex's false promise to purchase was part of a larger scheme to injure Learning Works, a business competitor, and to drive Learning Works out of business.
 
 
 27
 The district court dismissed the fraud claim on the ground that Learning Works had failed sufficiently to allege a fraudulent misrepresentation on the part of Learning Annex. In the district court's view, the amended complaint alleged only a misrepresentation with respect to a future event or a future promise to purchase. The court ruled that such a misrepresentation could not support a cause of action for fraud, on the ground that only misrepresentations concerning past or existing facts can be actionable for fraud. Although we disagree with the district court's analysis on this point, we conclude that the fraud claim was subject to dismissal for other reasons.
 
 
 28
 As we have recognized, in order to establish a cause of action for fraud under Maryland law, a plaintiff must allege and prove that:
 
 
 29
 (1) a representation made by a party was false; (2) its falsity was either known to the party or made with such reckless indifference to the truth to impute knowledge; (3) the misrepresentation was made for the purpose of defrauding some other person; (4) that person reasonably acted in reliance upon the misrepresentation with full belief in its truth, and he would not have done the thing from which damage resulted had it not been made; and (5) the person so acting suffered damage directly resulting from the misrepresentation.
 
 
 30
 Call Carl, Inc. v. BP Oil Corp., 554 F.2d 623, 629 (4th Cir.), cert. denied, 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977). It is true, as a general rule, that an action for fraud will lie only for misrepresentation of past or existing facts, and that breach of a promise to render a performance in the future is redressable only by an action in contract. See, e.g., id. at 631; Delmarva Drilling Co. v. Tuckahoe Shopping Center, Inc., 268 Md. 417, 302 A.2d 37, 41-42 (1973); Appel v. Hupfield, 198 Md. 374, 84 A.2d 94, 96 (1951). It is also settled law in Maryland, however, that "[a] promissory representation made with an existing intention not to perform is actionable for fraud." Sims v. Ryland Group, Inc., 37 Md.App. 470, 378 A.2d 1, 2 (1977). Accord Levin v. Singer, 227 Md. 47, 175 A.2d 423, 432 (1961).
 
 
 31
 In this case, Learning Works alleged that at the time Learning Annex promised to purchase its assets, it had no intention of performing its promise. Because the misrepresentation alleged in this case concerned Learning Annex's existing intention not to perform, Learning Works's fraud claim was not subject to dismissal on the ground that it alleged only misrepresentation as to a future event.
 
 
 32
 Dismissal of the fraud claim was nonetheless proper, because Learning Works failed sufficiently to allege reasonable reliance on Learning Annex's misrepresentation. Reasonable, detrimental reliance upon a misrepresentation is an essential element of a cause of action for fraud, see Call Carl, Inc., 554 F.2d at 629, and such reliance must be pleaded with particularity. See Fed.R.Civ.P. 9(b) (all averments of fraud and circumstances constituting fraud must be stated with particularity). In this case, the amended complaint alleges only that Learning Works relied on Learning Annex's misrepresentation to its detriment by ceasing its business operations. The amended complaint contains no factual allegations that would support Learning Works's claim that such reliance was reasonable. There is no indication in the amended complaint that Learning Works was required, under its alleged agreement with Learning Annex, to cease its business operations.[1] The amended complaint is devoid of any other factual allegations from which it could be inferred that such a course of conduct resulted from reasonable reliance on Learning Annex's misrepresentation. Under these circumstances, we must conclude that Learning Works's fraud claim was subject to dismissal, because Learning Works failed to allege reasonable reliance on Learning Annex's misrepresentation.
 
 
 33
 Because we find that Learning Works's amended complaint failed to state any claim upon which relief could be granted, we affirm the district court's dismissal of the amended complaint under Fed.R.Civ.P. 12(b)(6).
 
 
 34
 AFFIRMED.
 
 
 
 [1]
 Indeed, the pleadings in this case indicate that the parties expected Learning Works to continue its business operations. Learning Works attached as an exhibit to its amended complaint a copy of an Asset Purchase Agreement which specified that Learning Works was to be sold to Learning Annex as an ongoing business. Although the parties never executed this Agreement, its terms do suggest that the parties intended for Learning Works to continue its operations until the sale to Learning Annex had been completed. If the sale of Learning Works as an ongoing business was in fact what the parties contemplated, then Learning Works's cessation of its business operations would have been plainly unreasonable