884 F.2d 1391
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Joseph P. ZINSER, Plaintiff-Appellant,
v.
TRUSTEES FOR the ASBESTOS WORKERS, LOCAL NO. 11 PENSION
FUND, Defendant-Appellee,
and
INTERNATIONAL ASSOCIATION OF HEAT AND FROST INSULATORS &
ASBESTOS WORKERS LOCAL NO. 11, Defendant.
 No. 89-3208.
 United States Court of Appeals, Fourth Circuit.
 Argued June 5, 1989.
Decided Aug. 28, 1989.
 
 Kenneth D. Pack (H. Russell Smouse, Melnicove, Kaufman, Weiner & Smouse, P.A. on brief) for appellant.
 Carl R. Gold for appellees.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, ERVIN, Chief Judge, and WILKINS, Circuit Judge.
 PER CURIAM:
 
 
 1
 Joseph P. Zinser, former business manager of a union local, sought a declaration that the local's pension fund owed him pension benefits for a period after his formal employment with the local ceased or, in the alternative, that the local must pay him the pension fund contributions it made over the period. The district court dismissed the fund on its motion for summary judgment, concluding that Zinser, no longer the local's employee, had no right to benefits or contributions. We agree with the district court's analysis, and affirm.
 
 I.
 
 2
 Zinser served as business agent for Baltimore's International Association of Heat and Frost Insulators & Asbestos Workers ("the union") Local No. 11 ("the local") from 1954 through December 31, 1967. By the time he left the local to serve as a Washington, D.C.-based organizer for the union, Zinser had for some time also been a trustee of the local's pension fund ("the fund").
 
 
 3
 There is no dispute that Zinser served the local's membership loyally and well, and that the membership unanimously approved a motion to continue contributing to the fund on Zinser's behalf "for past services rendered and for future services which might be rendered." Zinser, though never on the local's payroll after 1967, continued to help the membership with various matters.[1] The local contributed for Zinser until 1978, when Zinser, still formally a union employee, asked that contributions cease after receiving news of the local's financial straits. In July, 1986, after failing to receive specific responses from the local to its queries about Zinser's employment status, the fund returned to the local the $12,122.80 the local had paid for Zinser since 1967.[2]
 
 
 4
 On July 10, 1987, Zinser filed a complaint for declaratory relief against the local and the fund. Zinser sought an order requiring either that the fund pay him benefits in respect of the 1968-78 contributions or that the local pay him the contributions refunded to it by the fund.[3] The fund's motion for summary judgment argued that (1) Zinser was not an employee of the local after 1967; (2) the union had no relationship with the fund; and (3) the fund, empowered to accept and manage contributions only in respect of employees of participating employers, thus acted properly in refunding post-1967 contributions and in refusing to pay Zinser benefits based on these contributions.[4] The district court agreed with the fund, and dismissed the action.
 
 II.
 
 5
 We entirely agree with the district court's conclusion that the facts and law make plain that Zinser's relationship with the local after 1967 was not "covered employment" under the terms of the plan, and that the fund therefore acted properly in returning the local's post-1967 contributions. We therefore affirm on the basis of the district court's opinion. Zinser v. Trustees for the Asbestos Workers Local No. 11 Pension Fund, CA-87-1837 (D.Md. Dec. 7, 1988).[5]
 
 
 6
 AFFIRMED.
 
 
 
 [1]
 Zinser's case stands or falls on the legal significance of his relationship to the local after 1967. All agree that Zinser regularly advised and assisted local officials and lay members, usually in response to members' inquiries, and often attended local meetings. Zinser served the local on weekends and off hours, not during the regular work day. The local does not assert that it conditioned pension contributions on Zinser's amenability to members' requests, and did not vary contributions according to Zinser's exertions. Zinser got no work space, equipment, staff, or direct compensation from the local after 1967, and the local did not list Zinser on its payroll or file IRS compensation reports for Zinser. For his part, Zinser never listed the local as an employer after 1967, and appears not to have been subject to the local's control in his contacts with its membership
 
 
 [2]
 We understand that Zinser, now retired, receives pension payments from the fund based on the local's contributions through December 31, 1967, and a pension from the union
 
 
 [3]
 The parties stipulated to the dismissal of the local on September 6, 1988
 
 
 [4]
 The parties stipulated to be bound by the provisions of the Restated Agreement and Declaration of Trust ("the agreement") and the Defined Benefit Pension Plan ("the plan"). The plan defines the fund's latitude to accept contributions and disburse benefits. The trustees of the fund returned the local's post-1967 funds based on their conclusion that Zinser was not a covered employee under the plan. Zinser could have been a covered employee if (1) in addition to being a union employee, he was a local "employee" under the terms of the plan; or (2) the union was an "employer" under the plan
 The plan defines "employee" as anyone "defined in the Collective Bargaining Agreement who is in the employ of an employer and who is in a collective bargaining unit represented by [the local] or who otherwise is in the employ of an employer who has agreed to make contributions on his behalf to [the fund]." The agreement defines "employee" similarly, and makes the trustees' good-faith interpretation of its terms binding on all interested persons. The definition of "employer", somewhat redundant with that of "employee" is "an employing organization which, either directly or as a member of an association of Employers, is a party to a Collective Bargaining Agreement with [the local] which provides that contributions shall be paid to [the fund]." "Covered employment" is largely a conflation of these definitions, being "an Employee's employment with an Employer for which the Employer makes contributions to the [Fund]."
 
 
 [5]
 The district court did not address an argument Zinser advanced to it and renews before us, that the fund is equitably estopped to deny him benefits. Assuming, without deciding, that an equitable estoppel argument is available to Zinser under ERISA, we see very little to suggest its application. Equitable estoppel, under the pertinent law of Maryland, requires a voluntary representation by the party to be estopped that induces detrimental reliance by the party asserting estoppel. Learning Works, Inc. v. The Learning Annex, 830 F.2d 541, 545 (4th Cir.1987). We do not believe, on these facts, that the trustees' acceptance of contributions from 1968-78, and subsequent failure to contact Zinser directly concerning his post-1967 status, amount to a voluntary representation of the fund's obligation to pay benefits, particularly in light of the trustees' frustrated attempts to discover Zinser's status from the local in 1977