Steven J. GARVIN, Diane Garvin, and I.S.P. Co., a West Virginia Corporation, Plaintiffs,

v.

SOUTHERN STATES INSURANCE EXCHANGE CO., Ann Boraas, and David Burton, Defendants.

No. CIV.A.1:04 CV 73.

United States District Court, N.D. West Virginia.

July 9, 2004.

P. Gregory Haddad, MacCorkle, Lavender, Casey & Sweeney, PLLC, Morgantown, WV, Joseph G. Nogay, Weirton, WV, for plaintiffs, Steven J. Garvin, Diane E. Garvin and I.S.P., Co., a West Virginia corporation.

Stephen R. Brooks, Flaherty, Sensabaugh & Bonasso, PLLC, Morgantown, WV, for defendants, Southern States Insurance Exchange Company, Ann Boraas and David Burton.

## MEMORANDUM OPINION AND ORDER OF REMAND

KEELEY, District Judge.

### I.

### PROCEDURAL BACKGROUND

On March 16, 2004, the plaintiffs filed their complaint in the Circuit Court of Harrison County. This complaint, comprised of bad faith and fraud claims, concerns insurance claims arising from the sale of adulterated feed by Southern States Cooperative, Inc. ("SSC") and Southern States Clarksburg Cooperative ("SSCC") to the plaintiffs in March 2000. The plaintiffs allege that Southern States Insurance Exchange Co. ("SSIE"), Ann Boraas ("Boraas"), and David Burton ("Burton") violated the Unfair Trade Prac-

tices Act ("UTPA") and perpetrated fraud during the administration of these insurance claims. On April 15, 2004, all defendants filed an answer and a notice of removal in this Court based upon diversity of citizenship. On June 8, 2004, the plaintiffs moved to remand their suit to state court, contending that their single-count complaint also contains an imbedded fraud cause of action against Burton related to his investigation of the insurance claims. The Court has heard oral argument and, for the reasons that follow, **DENIES** the plaintiffs' motion to remand.

### II.

### FACTUAL BACKGROUND

This lawsuit allegedly arises under the West Virginia Unfair Trade Practices Act, W. Va. Code §§ 33–11–1 to –10 ("UTPA"), and the common law doctrine of fraud. The facts of this case, derived from the complaint, are taken as true for the purposes of this order. Steven Garvin and Diane Garvin are residents of Harrison County, West Virginia, and I.S.P. Co. is a West Virginia corporation primarily operating in Harrison County, West Virginia. They bought adulterated feed from SSC and SSCC in March 2004. This feed led to the death and sickness of several of their race horses.

The plaintiffs sought to recover damages from this loss, estimated at $11 million, from the feed sellers' insurance company, SSIE, a Virginia corporation doing business and employing agents throughout West Virginia. In seeking recovery, the plaintiffs dealt primarily with Boraas and Burton. Boraas worked from her Richmond, Virginia, office as the claim representative employed by SSIE assigned to the insurance claim. Burton, a resident of Taylor County, West Virginia, investigated the sale of the adulterated feed for his

employer, SSC. SSC is one of the companies responsible for the sale of the adulterated feed and is not an insurance company. Burton's investigation included testing of the feed and the tissues of the affected horses for the presence of rodenticide.

On June 30, 2000, Boraas sent a letter to the plaintiffs denying liability for SSIE based on an assertion that no toxins were found in either the feed or the horse tissue. Boraas's denial of the insurance claim stemmed from testing performed by Burton. Following commencement of a lawsuit against SSC and SSCC, the plaintiffs learned that Burton's testing of the feed and horse tissue occurred at a facility unequipped to conduct tests for rodenticide. Following the settlement of the underlying claim in a previous lawsuit, the plaintiffs filed a second lawsuit against SSIE, Boraas, and Burton based upon their alleged efforts to conceal the adulterated nature of the feed from the plaintiffs and thereby escape liability for the sale of this feed.

### III.

### *LEGAL STANDARD FOR MOTION TO REMAND*

"Typically, an action initiated in a state court can be removed to federal court only if it might have been brought in federal court originally." *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370 (4th Cir.2003). The party seeking removal bears the burden of showing that the district court has original jurisdiction. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994); 28 U.S.C. § 1441(a) (2004). "[C]ourts should resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir.1999). In the Fourth Circuit, removal statutes are narrowly construed *against*

removal. *Schlumberger Indus., Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1284 (4th Cir.1994); *Mulcahey*, 29 F.3d 148, 151 (4th Cir.1994).

A district court has jurisdiction over a suit between citizens of different states when the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a) (2004). An action based on diversity jurisdiction may be removed only if "none of the parties in interests properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (2004). For the federal court to have this original jurisdiction, the citizenship of each plaintiff must be "diverse from the citizenship of each defendant," thereby ensuring "complete diversity." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68, 117 S.Ct. 467 (1996) (citing *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 531, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967)).

To prove a fraudulent joinder, the removing party must show either outright fraud in the plaintiffs' pleadings or jurisdictional facts, or establish that "no possibility" exists for the plaintiffs to bear out a cause of action against the in-state defendant in state court even after resolving all issues of fact and law in their favor. *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir.1999) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232–33 (4th Cir.1993)). "If there is a real possibility that the plaintiff has stated a cause of action the joinder is not fraudulent and the action should be remanded." *Rinehart v. Consol, Coal Co.*, 660 F.Supp. 1140, 1141 (N.D.W.Va.1987). The removing party must prove fraudulent joinder by "clear and convincing evidence." *Id.* (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97–98, 42 S.Ct. 35, 66 L.Ed. 144 (1921)).

## IV.

### DISCUSSION

In deciding this case, the Court must determine if the plaintiffs fraudulently joined Burton as a defendant in this action. Fraudulent joinder refers to a court's finding either "that no cause of action is stated against the nondiverse defendant, or *in fact* no cause of action exists." *AIDS Counseling and Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir.1990) (emphasis in original). If Burton was fraudulently joined to both of these claims, then total diversity of citizenship exists between the parties, and this Court has jurisdiction. Accordingly, the case could not be remanded to state court. Alternatively, if Burton was not fraudulently joined as a defendant, then the case must be remanded to state court. The Court will not find fraudulent joinder if there is "clear and convincing evidence" of "a real possibility that the plaintiff has stated a cause of action" against Burton "after resolving all issues of fact and law in their [the plaintiff's] favor." *Hartley*, 187 F.3d at 424 (quoting *Marshall*, 6 F.3d at 232–33); *Rinehart*, 660 F.Supp. at 1141 (citing *Wilson*, 257 U.S. at 97–98, 42 S.Ct. 35 (1921)).

### A.

### The UTPA Claim

"The Unfair Trade Practices Act, W. Va.Code §§ 33–11–1 to 10, and the tort of bad faith apply only to those persons or entities and their agents who are engaged in the business of insurance." *Hawkins v. Ford Motor Co.*, 211 W.Va. 487, 566 S.E.2d 624, 625, Syl. pt. 2 (W.Va.2002). This statute includes "any individual, company, insurer, association, organization, society, reciprocal, business trust, corporation, or any other legal entity" within the defini-tion of "person." W. Va.Code § 33–11–2(a) (2004).

The plaintiffs argue that Burton can be sued under the UTPA because he is a "person ... engaged in the business of insurance." To support this assertion, the plaintiffs rely on the ruling of the West Virginia Supreme Court of Appeals in *Taylor v. Nationwide Mutual Insurance Co.* 214 W.Va. 324, 589 S.E.2d 55 (2003). In *Taylor*, West Virginia's highest court held that "a cause of action exists in West Virginia to hold a claims adjuster employed by an insurance company personally liable for violations of the West Virginia Unfair Trade Practices Act, W. Va.Code § 33–11–1 to –10." *Id.* at 61. Reasoning that the defendant Scarlett Tarley ("Tarley") in *Taylor* was "an individual" and, therefore, a "person" as defined by the statute, and finding that an insurance company employed her, the court affirmed the plaintiff's right to sue Tarley under the UTPA. *Id.* at 62.

In the instant case, Burton, like Tarley, is an individual and, therefore, a "person" as defined by the UTPA. Unlike Tarley, an insurance adjuster handling the administration of the plaintiff's insurance claim, Burton has never worked for an insurance company and was not directly involved in the administration of the plaintiffs' insurance claim.

Indeed, the facts of the instant case more closely approximate the circumstances in *Hawkins*. In *Hawkins*, the plaintiffs moved to amend their complaint against Ford Motor Company, a self-insured entity, to include a bad faith claim under the UTPA. 211 W.Va. 487, 566 S.E.2d 624, 627. The circuit court denied this motion, finding that "the common law duty of good faith and fair dealing runs between insurers and insureds, and ... no contract of insurance existed between Ford and the Hawkins." *Id.* Furthermore,

the circuit court found that the purpose of the UTPA is to regulate trade practices and "should not be interpreted to apply to entities which are not engaged in the business of insurance." *Id.*

■ The plaintiffs appealed this dismissal to the West Virginia Supreme Court of Appeals, which found "the issue of whether a self-insured entity can be sued under the UTPA" to be one of first impression in the state. The Court found that "Ford's principal business is the manufacture and sale of automobiles," not the business of insurance. *Id.* at 629. Likewise, Burton was not engaged in the business of insurance at the time relevant to the plaintiff's allegation, and is therefore outside the scope of the UTPA. Just as Ford's primary enterprise is the manufacture and sale of motor vehicles, Burton's employment was and remains with SSC, a feed supplier. He investigated the plaintiffs' claim on behalf of SSC, not the insurance company. While this investigation was undoubtedly relevant to the interests of SSIE, his work on behalf of SSC fails to place him in the business of insurance.

Broadening the scope of the UTPA to include those individuals indirectly involved in the administration of an insurance claim would frustrate the intent of this statute. For example, an insurance claim involving an automobile accident often relies upon the report of a police officer. Much like Burton's investigation in the instant case, a police officer's report could be a central factor in an insurance company's administration of an insurance claim arising from this accident. Naming the police officer as a defendant in a bad faith claim, however, would not correspond to the intent of the UTPA, a statute designed to regulate the insurance industry. Likewise, the Court concludes that Burton should not be included as a defendant in the plaintiffs' bad faith claim.

## B.

### The Fraud Claim

■ In their briefs, the parties do not address whether federal or state law applies to the issue of heightened pleading requirements for fraud claims. Instead, they argue under the mistaken assumption that state law applies to this issue. Pleading requirements represent an area of procedural law, however, and are therefore governed by federal law. *Tiller v. Hobart Corp.,* 58 F.Supp.2d 688, 689 (W.D.Va. 1999). In *Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Supreme Court held that, in "a situation . . . covered by one of the Federal Rules," a court must apply that rule. Therefore, the Court found that service of process, a situation covered by the Federal Rules of Civil Procedure, is a procedural issue over which federal law has paramount authority. *Id.* at 472, 85 S.Ct. 1136. Likewise, these Federal Rules provide pleading requirements for fraud claims in federal court, and are therefore the governing authority on this issue.

■ Under the Federal Rules of Civil Procedure, most causes of action need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). "Special matters," such as fraud claims, however, must be "stated with particularity." Fed.R.Civ.P. 9(b) ("Rule 9(b)"). The elements of a fraud claim requiring particularity include " 'the time, place, and contents of the false representations, as well as the identity of the person making the representations and what he obtained thereby.' " *Harrison,* 176 F.3d at 783–84. Also, reasonable detrimental reliance on a misrepresentation is an essential element of a cause of action of fraud, and this detrimental reliance must be pled with

particularity. *Learning Works, Inc. v. The Learning Annex, Inc.,* 830 F.2d 541, 547 (4th Cir.1987). Complaints that fail to meet these heightened pleading requirements are subject to dismissal under Fed. R.Civ.P. 12(b)(6). *Lasercomb Am., Inc. v. Reynolds,* 911 F.2d 970, 980 (4th Cir.1990).

A court should hesitate to dismiss a complaint under Rule 9(b) if the court believes that "the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial" and that the "plaintiff has substantial prediscovery evidence of those facts." *Harrison,* 176 F.3d at 784; *See also Dunn v. Borta,* No. 03–1362, 2004 WL 1110424 (4th Cir. May 19, 2004) (holding that the fraud claims against the defendant should not have been dismissed, as the complaint provided him with fair notice of the claims made against her) and *U.S. ex rel. Harrison v. Westinghouse Savannah River Co.,* 352 F.3d 908, 921–22 (4th Cir.2003) (holding that fraud claims were wrongfully dismissed for insufficient particularity, as they provided sufficient notice of the facts of the alleged misconduct).

In the complaint in the instant case, the plaintiffs allege that Burton, acting "in a course of conduct to negligently, fraudulently, and/or willfully or wantonly, manipulate, misrepresent, and/or falsify documents, evidence, tests, ... fraudulently and/or negligently concealed" the sale of adulterated feed to the plaintiffs. It also alleges that Burton, along with the other defendants, "knew or should have known that they [SSC and SSCC] sold adulterated feed to the plaintiffs in violation of statute," resulting in liability for the feed sellers. Finally, the complaint states that the actions of Burton, in conjunction with the actions of the other defendants, caused the plaintiffs "increased costs and expenses for trial including but not limited to costs for expert witnesses, general litiga-tion costs, travel costs, lost wages, court costs, and attorneys fees," as well as "emotional distress, annoyance, inconvenience, aggravation, and other unspecified elements and damages."

In *Learning Works,* 830 F.2d at 542, the plaintiff appealed the dismissal of its complaint involving claims of fraud and breach of contract. The Fourth Circuit found this dismissal proper, partly because Learning Works failed sufficiently to allege reasonable reliance on Learning Annex's misrepresentation. *Id.* at 546. The Fourth Circuit held that "[r]easonable, detrimental reliance upon a misrepresentation is an essential element of a cause of action for fraud ... and such reliance must be pled with particularity." *Id.* (citing *Call Carl, Inc.,* 554 F.2d 623, 629 (4th Cir.1977), *cert. denied,* 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977) and Rule 9(b)). Therefore, the Fourth Circuit found that the complaint's lack of "factual allegations that would support Learning Works's claim" of reliance upon Learning Annex's misrepresentation rendered the claim subject to dismissal for failing to meet the heightened pleading requirements of Rule 9(b). *Id.*

██ Although the complaint identifies Burton as the individual involved in allegedly fraudulent actions, it provides no details concerning these actions. It fails to name the time, place, or content of these fraudulent actions. Like the complaint in *Learning Works,* it does not explain how the plaintiffs relied on Burton's actions or how such reliance caused their enumerated losses. Because of these omissions, the Court cannot be satisfied that Burton has been made aware of the particular circumstances for which he will have to prepare a defense at trial. The complaint fails to provide such notice, and thus does not meet the heightened pleading standards of Rule 9(b).

Amending the complaint to contain the requisite particularity for the fraud claim against Burton may resolve the issue of fraudulent joinder. After a responsive pleading has been filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). By allowing the plaintiffs to state their fraud claim against Burton with the requisite particularity, the Court can reconsider whether it continues to have jurisdiction over this suit. Therefore, this Court provides the plaintiffs with leave to amend their complaint.

## V.

### CONCLUSION

Based on the foregoing, the Court finds that it has jurisdiction to hear the plaintiffs' claims because total diversity of citizenship existed between the parties at the time of the removal of the complaint. Therefore, the Court **DENIES** the motion to remand this action to Circuit Court **WITHOUT PREJUDICE** and **GRANTS** the plaintiffs **LEAVE TO AMEND THEIR COMPLAINT.**

The Clerk is directed to transmit copies of this Order to counsel of record by United States mail.