**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CASSANDRA DIANNE JACKSON,
<u>Plaintiff-Appellee,</u>

v.

BUILDERS TRANSPORT, INCORPORATED,
a Virginia corporation,                           No. 95-2983
<u>Defendant-Appellant,</u>

and

HARVEY L. DONAHUE,
<u>Defendant.</u>

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(CA-92-13)

Argued: July 8, 1996

Decided: August 2, 1996

Before WILKINSON, Chief Judge, HAMILTON, Circuit Judge,
and JOSEPH F. ANDERSON, JR., United States District Judge for
the District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Alan M. Gelb, FISCHBEIN, BADILLO, WAGNER,
HARDING, New York, New York, for Appellant. Barry M. Hill,

GOMPERS, MCCARTHY, HILL & MCCLURE, Weirton, West Virginia, for Appellee. **ON BRIEF:** Pamela Phillips, FISCHBEIN, BADILLO, WAGNER, HARDING, New York, New York; John E. Busch, BUSCH & TALBOTT, Elkins, West Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Cassandra Dianne Jackson (Jackson) brought this action against Builders Transport, Inc. (BTI), a long-distance trucking company, and Harvey L. Donahue (Donahue), a truck driver employed by BTI. Jackson sought damages for personal injuries resulting from an accident that occurred as she was riding in a BTI truck being driven by Donahue. BTI appeals from a $500,000 judgment entered in favor of Jackson. We affirm.

I.

In 1991, while on a driving trip for BTI, Donahue met Jackson at a truck stop in Houston, Texas. Although BTI had a written policy prohibiting drivers from carrying passengers, Donahue allowed Jackson to ride with him for several weeks. On November 22, 1991, as he was driving along a mountain road near Elkins, West Virginia, Donahue lost control of the truck, causing the truck to plummet down the side of a mountain. The accident rendered Jackson a quadriplegic.[1]

At the time of the accident, BTI was self-insured for bodily injury and property damage liability up to $500,000. For liability in excess of $500,000, BTI had an insurance policy issued by Insurance Company of North America (INA) that provided $14,500,000 of coverage

_____

[1] Jackson has regained some use of her arms.

2

over the self-insured limit of $500,000. Before the accident occurred, the Interstate Commerce Commission (ICC) had authorized BTI to self-insure the first $500,000 of its bodily injury and property damage liability under 49 U.S.C. § 10927.[2] BTI also received permission from the West Virginia Public Service Commission (PSC) to satisfy West Virginia's financial responsibility requirements through self-insurance.[3]

Jackson brought this action in United States District Court for the Northern District of West Virginia,[4] alleging that the accident occurred while Donahue was acting within the scope of his employment with BTI and that the accident resulted from Donahue's negligence. Jackson demanded judgment against Donahue and BTI in an amount in excess of $5,000,000. BTI moved for summary judgment, arguing that it was not vicariously liable to Jackson for Donahue's negligence because Donahue violated BTI's rules in allowing Jackson to ride with him. The district court denied the motion.

At the hearing on BTI's summary judgment motion, a question arose regarding whether BTI's self-insurance constituted coverage for Donahue even if BTI was not vicariously liable for Donahue's negligence. BTI asserted that its self-insurance did not constitute such coverage. Because the West Virginia Supreme Court of Appeals had

_____

[2] Under 49 U.S.C. § 10927, motor carriers must file with the ICC a certificate of insurance, proof of qualifications as a self-insurer, or some other form of security in order to obtain a permit to provide interstate transportation services. See 49 U.S.C. §§ 10923, 10927; 49 C.F.R. §§ 1043.1 to .5. The ICC required BTI to have a minimum of $750,000 of liability coverage. See Jackson v. Donahue , 457 S.E.2d 524, 531 (W. Va. 1995).

[3] West Virginia law requires all owners of motor vehicles to maintain "proof of financial responsibility," i.e. , liability insurance in the minimum amounts of $20,000 for injury to one person and $40,000 for injury to more than one person arising out of one accident. See W. Va. Code §§ 17D-2A-3, 17D-4-2. At the time BTI obtained permission to self-insure, the West Virginia PSC required motor carriers to obtain liability insurance in the minimum amounts of $50,000 for injury to one person and $100,000 for injury to more than one person arising out of one accident. See Jackson, 457 S.E.2d at 531.

[4] Jurisdiction was based on diversity of citizenship. See 28 U.S.C. § 1332.

3

never addressed the question of whether, under West Virginia law, a self-insured employer owes insurance coverage to its employees regardless of vicarious liability, the district court indicated that it would be inclined to certify this question to the West Virginia Supreme Court of Appeals.

Although BTI disputed whether its self-insurance provided coverage for Donahue's negligence, INA acknowledged that the insurance policy it issued to BTI provided coverage for Donahue's negligence, but only for damages in excess of $500,000 and then only to the policy limits. Accordingly, after the summary judgment hearing, INA negotiated a settlement agreement with Jackson. Although BTI was not a party to the settlement agreement, it is apparent that the settlement agreement was negotiated as part of an effort among all the parties and the district court to isolate questions that would be certified to the West Virginia Supreme Court of Appeals. The district court entered an order summarizing the settlement agreement as follows:

> A settlement has been reached between the plaintiff and [INA] for payment of $2 million on behalf of the defendant[s]. This $2 million is a settlement for the amount of the plaintiff's claim against the defendants which exceeds $500,000.00. Defendant BTI is self-insured for the first $500,000.00 of the plaintiff's claim, and the plaintiff's entitlement to this first $500,000.00 is an issue yet to be resolved. In essence the settlement represents a compromise of the amount of the plaintiff's damages at $2.5 million, with the $2 million in excess of BTI's self-insurance being paid now, and with the plaintiff's entitlement to the first $500,000.00 to be determined as an issue of law in the future. The $2 million settlement will release [INA] and defendant Donahue completely from liability to the plaintiff, and it will release defendant BTI from liability in excess of its $500,000.00 of self-insurance.

(J.A. 333-34). With Donahue and INA thus removed from the case, attorneys for BTI and Jackson, along with the district court, devised two questions to be certified to the West Virginia Supreme Court of Appeals:

4

1. Under West Virginia law, does a foreign commercial trucking company which has been granted authority to self-insure its automobile liability exposure in West Virginia owe coverage to an employee irrespective of vicarious liability?

If the answer to question 1 is yes, then:

2. Where there is up to $500,000 in self-insurance available, is the extent of the company's coverage obligation limited to the dollar amounts [i.e., $20,000] provided for in [W. Va. Code § 17D-4-2]?

Jackson, 457 S.E.2d at 526-27.

The West Virginia Supreme Court of Appeals answered the first question in the affirmative, holding in effect that BTI must provide insurance coverage for Donahue for this accident. See id. at 530. The court then answered the second certified question in the negative, holding that the extent of BTI's coverage obligation was not limited to $20,000. Id. at 532.

After the West Virginia Supreme Court of Appeals rendered its decision, Jackson filed a motion in the district court for entry of judgment in the amount of $500,000 against BTI. BTI moved to dismiss the case, or in the alternative, for a determination that BTI's liability to Jackson was limited to $20,000, rather than $500,000. The district court denied BTI's motion to dismiss and granted Jackson's motion to enter judgment in the amount of $500,000 against BTI, rejecting BTI's argument that the judgment amount should be limited to $20,000. BTI appeals, arguing that the district court erred in entering judgment in the amount of $500,000.**5**

II.

At the outset, we note that by agreeing to submit the second certified question to the West Virginia Supreme Court of Appeals, BTI

_____

**5** BTI does not appeal the denial of its motion to dismiss.

5

agreed to allow that court to determine, as a matter of West Virginia law, the amount of insurance coverage it was required to provide for Donahue's negligence. By answering the second certified question in the negative, the West Virginia Supreme Court of Appeals signified that BTI, as an insurer, was obligated to provide $500,000 of insurance coverage for Donahue's negligence. Because federal courts sitting in diversity must apply state law on state law matters, see Erie R. Co. v. Tompkins, 304 U.S. 64, 77 (1938), we are bound to enforce the West Virginia Supreme Court of Appeals' decision.

BTI argues that we are not bound by the decision of the West Virginia Supreme Court of Appeals because that court did not base its decision on West Virginia law, but rather on an erroneous application of federal law. More specifically, BTI posits that the West Virginia Supreme Court of Appeals based its decision on an erroneous application of federal preemption principles, and that because federal courts are not bound by state court determinations regarding federal preemption, see Grantham v. Avondale Indus., 964 F.2d 471, 473-74 (5th Cir. 1992), this court is free to disregard the West Virginia Supreme Court of Appeals' answer to the second certified question. To evaluate this argument, it is necessary to review the reasoning used by the West Virginia Supreme Court of Appeals in answering the second certified question.

The second certified question simply asked whether the extent of BTI's insurance obligation was limited to the dollar amount, i.e. $20,000, provided for in W. Va. Code § 17D-4-2. To answer this question, the West Virginia Supreme Court of Appeals began its analysis by recognizing that W. Va. Code § 17D-4-2 required liability insurance in the minimum amount of $20,000 for personal injuries to one person and that a regulation of the PSC applicable to motor carriers required liability insurance in the minimum amount of $50,000 for personal injuries to one person. Jackson, 457 S.E.2d at 531. The court went on to reject the contention that these amounts constituted caps on the extent of BTI's liability. Id. at 532. In reaching this conclusion, the court was influenced by the fact that "in granting self-insurer status to BTI, the Public Service Commission weighed substantially" BTI's compliance with the federal minimum requirement of $750,000. Id. at 531. Indeed, the PSC piggybacked on to the federal requirements by requiring BTI to provide the PSC with "`any and all

6

supplementary information that it provides to the ICC on the same time basis.'" Id. The court was further influenced by the fact that in pursuit of permission to self-insure, BTI informed the PSC that the ICC had authorized BTI to self-insure and that BTI"`will self-insure its bodily injury and property damage liability to a level of $500,000.'" Id. The court concluded:

> Obviously, BTI was operating in interstate commerce during the period in question and could not have done so without complying with the federal requirements. It was self-insured in other states, in addition to West Virginia. Accordingly, we hold that a foreign commercial trucking corporation operating in interstate commerce pursuant to a federal regulatory scheme, which provides federal minimum limits of liability coverage, is not subject to the[liability] limits set forth in W. Va. Code, 17D-4-2 [which provides a $20,000 limit], concerning this State's financial responsibility provisions, even though the corporation was granted authority to self-insure by the West Virginia Public Service Commission. Therefore, we answer the second certified question in the negative.

Id. at 532.

Accordingly, the West Virginia Supreme Court of Appeals concluded that, as a matter of state law, BTI's obligation to provide insurance coverage was not limited to $20,000 because the decision to grant BTI permission to self-insure under state law was based on the existence of the federal minimum requirements and the fact that BTI informed the PSC that the ICC had authorized BTI to self-insure the first $500,000 of its bodily injury and property damage liability under 49 U.S.C. § 10927.

An unpublished order certifying the case back to the district court states that the West Virginia Supreme Court of Appeals answered the second certified question by finding that "federal minimum limits of liability coverage imposed on foreign commercial trucking corporations operating in interstate commerce preempt general state minimum limits of liability coverage set forth in W. Va. Code § 17D-4-2

7

. . . ." (J.A. 368). This order was signed by the clerk of the West Virginia Supreme Court of Appeals.

Seizing on the word "preempt" in the order certifying the case back to the district court, BTI argues that the West Virginia Supreme Court of Appeals based its answer to the second certified question on federal preemption tenets rather than on West Virginia law. Our review of the West Virginia Supreme Court of Appeals' decision, however, convinces us that the court did not base its decision on federal preemption. At no point did the court use the words "preempt" or "preemption," cite cases concerning federal preemption, or in any way discuss federal preemption tenets. Instead, the court emphasized the factors relied on by the West Virginia PSC in allowing BTI to self-insure, including the crucial factor that BTI had complied with the ICC requirements to self-insure. Considering that the PSC "weighed substantially" BTI's compliance with the higher ICC requirements for self-insurance, even to the point of ordering BTI to file copies of any documents it filed with the ICC to the PSC, the court reasoned that the PSC did not intend for BTI's obligation to provide coverage to be limited by the West Virginia statutory or regulatory minimum requirements. As the court stated, "In essence, the PSC granted BTI, as a self-insured entity, permission to carry bodily injury liability insurance in the amount of $14,500,000 (with its excess liability carrier) and $500,000 in primary self-insurance for total coverage in the amount of $15,000,000." Jackson, 457 S.E.2d at 526 n.3.

Viewed in the context of the court's emphasis in its published opinion on the factors relied on by the PSC in allowing BTI to self-insure, the lone reference to the word "preempt" in the unpublished order certifying the case back to the district court is of no import. The clerk's use of the word "preempt" did not imply that the federal minimum requirements preempt state minimum requirements as a matter of federal law because the West Virginia Supreme Court of Appeals clearly did not rely on preemption in answering the certified questions. Rather, properly understood, the clerk's use of the word "preempt" was a shorthand way of stating that the federal minimum requirements, coupled with the ICC's authorization for BTI to self-insure the first $500,000 of its bodily injury and property damage liability, provided the cap on BTI's liability under West Virginia law.

8

Because the West Virginia Supreme Court of Appeals based its answer to the second certified question on West Virginia law, we are bound to enforce that court's decision. See Erie , 304 U.S. at 77. Accordingly, we affirm the district court's entry of judgment in the amount of $500,000 in favor of Jackson.

AFFIRMED

9