566 S.E.2d 624

**Dorothy L. HAWKINS and Paul E. Hawkins, Plaintiffs Below, Appellants**

v.

**FORD MOTOR CO., A Delaware Corporation, Defendant Below, Appellee**

No. 30357.

Supreme Court of Appeals of West Virginia.

Submitted June 4, 2002.

Decided June 19, 2002.

Concurring Opinion of Justice McGraw July 3, 2002.

---

Christopher J. Heavens, Esq., Heavens Law Offices, Charleston, Charleston, West Virginia, Attorney for Appellants.

Jeffrey M. Wakefield, Esq., Michael Bonasso, Esq., Erica M. Baumgras, Esq., Robert P. Lorea, Esq., William J. Hanna, Esq., Flaherty, Sensabaugh & Bonasso, Attorneys for Ford Motor Co. Charleston, West Virginia.

Marc E. Williams, Esq., Robert L. Massie, Esq., Paul J. Loftus, Esq., The Defense Trial Counsel of West Virginia; William L. Frame, Esq., Paul T. Farrell, Jr., Esq., The West Virginia Trial Lawyers Association; James D. Lamp, Esq., Daniel R. Mordarski, Esq., General Motors Corporation; William F. Foster, II, Esq., John R. Hoblitzell, Esq., Richard E. Holtzapfel, Esq., The West Virginia Hospital Association; Leah J. Heimbach, Esq., West Virginia University Hospitals, Inc.; Cheryl A. Eifert, Esq., Charleston Area Medical Center, for Amicus Briefs.

MAYNARD, Justice:

The appellants, Dorothy and Paul Hawkins, seek reversal of an order entered by the Circuit Court of Kanawha County on January 29, 2001. In that order, the court denied the Hawkins' motion for attorney fees and costs under the Magnuson–Moss Act. The court also refused to allow the Hawkins to amend their complaint to assert bad faith and unfair trade practices claims against Ford Motor Company.

## I.

### FACTS

The Hawkins owned a 1991 Ford Aerostar van which was destroyed by fire on October 28, 1996. The Hawkins purchased the used vehicle from a Chevrolet dealership. By the time fire consumed the van, its engine had been replaced and it had been driven almost 90,000 miles. The van was insured by State Farm Automobile Insurance Company who paid $10,715.25 to settle the claim. State Farm then demanded subrogation from Ford Motor Company.

State Farm and Ford offer differing accounts of the facts surrounding the fire. State Farm believes the origin of the fire is uncontroverted and not suspicious; the ignition switch malfunctioned when the van was parked and unattended in the Hawkins' driveway. Ford believes the origin of the fire is controverted and suspicious; the Hawkins' son discovered the fire and said that it started with an explosion while Paul Hawkins, the owner, was in a shed in the dark at the time but did not hear an explosion. Moreover, Paul Hawkins claimed the front portion of the van was consumed by fire within five minutes and that he was blown back five feet when he opened the passenger door. Photographs of the ignition switch did not reveal signs which are normally apparent when an ignition switch causes a fire; in contrast to an ignition switch fire which usually smolders and requires significant time to develop, this fire appeared to be rapid and intense. In a word, Ford suspected arson.

Nonetheless, the van was part of a voluntary recall by Ford due to a short circuit which could develop in the ignition switch and lead to overheating, smoke, and in rare circumstances, fire in the steering column of the vehicle. The Hawkins received their recall letter the day following the fire.

State Farm's subrogation claim was denied by Ford because the facts surrounding the loss did not indicate that a faulty ignition switch caused the fire. Settlement negotiations between Ford and State Farm failed. On May 30, 1997, State Farm instituted a subrogation action in circuit court by filing a complaint in the name of its insureds. In addition to pursuing a claim for the fair market value of the vehicle, the Hawkins sought recovery for loss of use, annoyance, inconvenience, and general damages as well as attorney fees and expenses. The case ultimately went to trial and the jury returned a verdict for the Hawkins in the amount of

$10,715.25, the fair market value of the vehicle, plus $1,000 for loss of use.

Prior to trial, the Hawkins filed a motion seeking to amend their complaint to include claims of bad faith and claims under the Unfair Trade Practices Act, UTPA, W.Va. Code §§ 33–11–1 to 10, against Ford. The circuit court denied the motion because the common law duty of good faith and fair dealing runs between insurers and insureds, and while a contract of insurance did exist between State Farm and the Hawkins, no contract of insurance existed between Ford and the Hawkins. The court also found that the UTPA's purpose is to regulate trade practices in the business of insurance and "should not be interpreted to apply to entities which are not engaged in the business of insurance."

Subsequent to trial, the Hawkins filed a motion seeking attorney fees pursuant to the Magnuson–Moss Act, 15 U.S.C. § 2310(d)(2) (1975), and costs. The court denied the motion because the Hawkins did not properly plead or assert such a claim in their complaint. The Hawkins' complaint stated, "As a proximate result of the aforesaid negligence and breaches of warranties by Ford, including breach of the implied warranty of merchantability imposed by West Virginia law, plaintiffs are entitled to an award of damages for their legal costs and expenses, including attorney fees, pursuant to West Virginia Code, § 46–2–101, et seq." Ford filed a motion for a new trial which the court denied because Ford "failed to present a sufficient factual basis upon which to overturn the jury's decision in this case[.]" The Hawkins appeal from the court's January 29, 2001 order which denied the Hawkins' motion to vacate the February 29, 2000 order that denied the motion to amend the complaint to assert a cause of action under the UTPA; denied the Hawkins' motion for attorney fees and costs; and denied Ford's motion for a new trial.

## II.

## STANDARD OF REVIEW

On appeal, the Hawkins allege that the circuit court erred by denying their request to amend their complaint to assert a cause of action against Ford under the UTPA and by denying their request for attorney fees and costs. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review." Syllabus Point 1, Chrystal R.M. v. Charlie A.L., 194 W.Va. 138, 459 S.E.2d 415 (1995). Moreover, "[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed de novo." Syllabus Point 4, Burgess v. Porterfield, 196 W.Va. 178, 469 S.E.2d 114 (1996). More specifically,

A trial court is vested with a sound discretion in granting or refusing leave to amend pleadings in civil actions. Leave to amend should be freely given when justice so requires, but the action of a trial court in refusing to grant leave to amend a pleading will not be regarded as reversible error in the absence of a showing of an abuse of the trial court's discretion in ruling upon a motion for leave to amend.

Syllabus Point 6, Perdue v. S.J. Groves and Sons Company, 152 W.Va. 222, 161 S.E.2d 250 (1968).

## III.

## DISCUSSION

The Hawkins recognize that the issue of whether a self-insured entity can be sued under the UTPA is an issue of first impression in West Virginia. They believe they should be allowed to amend their complaint to assert such a claim against Ford because the company "engage[s] in those activities regulated by the Act[.]"

Amendments to pleadings are governed by Rule 15 of the West Virginia Rules of Civil Procedure. Rule 15(a) states in pertinent part, "[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." This Court previously observed that:

" ' "The purpose of the words 'and leave [to amend] shall be freely given when justice so requires' in Rule 15(a) W.Va.R.Civ. P., is to secure an adjudication on the merits of the controversy as would be secured under identical factual situations in the absence of procedural impediments; therefore, motions to amend should always be granted under Rule 15 when: (1) the amendment permits the presentation of the merits of the action; (2) the adverse party is not prejudiced by the sudden assertion of the subject of the amendment; and (3) the adverse party can be given ample opportunity to meet the issue." Syl. pt. 3, *Rosier v. Garron, Inc.*, 156 W.Va. 861, 199 S.E.2d 50 (1973).' Syl. Pt. 6, *Berry v. Nationwide Mut. Fire Ins. Co.*, 181 W.Va. 168, 381 S.E.2d 367 (1989)." Syllabus Point 8, *McDowell County Bd. of Educ. v. Stephens*, 191 W.Va. 711, 447 S.E.2d 912 (1994).

The Hawkins argue that the three requirements were met in their case. First, they contend that an amendment to the complaint would have permitted them to present evidence that Ford's self-insured status rendered it subject to the laws which govern insurance companies. Next, the Hawkins contend that Ford's initial denial of the claim without an investigation justified an award under insurance law. Moreover, say the Hawkins, Ford would not have been prejudiced because the company had ample time to prepare a defense. Ford argues that the circuit court properly found that an uninsured product manufacturer[1] is not subject to the provisions of the UTPA. We agree.

The UTPA is but one component of an extensive statutory and regulatory scheme which is designed to govern those entities and individuals who are engaged in the business of insurance. In fact, W.Va.Code § 33-11-1 (1974) states:

The purpose of this article is to regulate trade practices in the *business of insurance* . . . by defining, or providing for the determination of, all such practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined. (Emphasis added).

The West Virginia Code defines insurance as "a contract whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies." W.Va. Code § 33-1-1 (1957). An "[i]nsurer is every person engaged in the business of making contracts of insurance." W.Va.Code § 33-1-2 (1957). Specifically, "[t]ransacting insurance includes solicitation and inducement, preliminary negotiations, effecting a contract of insurance and transaction of matters subsequent to effecting the contract and arising out of it." W.Va.Code § 33-1-4 (1957). Ford simply does not fit the definition of an "insurer" and is not in the business of insurance.

We look to other jurisdictions who have decided this issue for guidance. In *Ogden v. Montana Power Co.*, 229 Mont. 387, 747 P.2d 201 (1987), the Montana Power Company (MPC) was self-insured. Ogden, a property owner, brought an action against the power company seeking to collect damages resulting from a fire that was caused when a power line owned by the power company became detached and came into contact with another power line. Negotiations between the parties regarding the amount of property damage failed. Ogden sued for damages alleging negligence. Ogden subsequently amended his complaint contending that the power company breached the implied covenant of good faith and fair dealing and violated Montana's UTPA. In ruling that neither the UTPA nor the common law duty to act in good faith applies to self-insured entities like MPC, the Supreme Court of Montana reasoned that the UTPA was enacted by the legislature to govern and regulate the business of insurance and MPC is primarily in the business of

---

1. Even though companies such as Ford are typically referred to as "self-insured," Ford states that it is uninsured for product liability losses of $25,000,000 or less. This Court has previously recognized that "[t]he phrase 'self-insurance' means, generally, the assumption of one's own risk and, typically, involves the setting aside of a special fund to meet losses and pay valid claims, instead of insuring against such losses and claims through an insurance policy." Syllabus Point 1, *Jackson v. Donahue*, 193 W.Va. 587, 457 S.E.2d 524 (1995).

providing power and utilities to customers, although it insures itself.

■ When asked to consider whether Kentucky's Unfair Claims Settlement Practices Act and the tort of bad faith apply to persons or entities who are self-insured or uninsured, the Supreme Court of Kentucky "conclude[d] that both the statute and the common law tort apply only to persons or entities engaged in the business of insurance[.]" *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 95 (Ky.2000). We quote with approval from the court's reasoning:

> The gravamen of the UCSPA is that an insurance company is required to deal in good faith with a claimant, whether an insured or a third-party, with respect to a claim which the insurance company is *contractually obligated* to pay. Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute.

*Id.* at 100. (Emphasis in original).

In the case at bar, Ford's principal business is the manufacture and sale of automobiles. Ford is not an insurer and is under no *contractual obligation* to pay the Hawkins' claim. Thus, there exists no statutory or common law basis for a bad faith claim against the company. We hold that the UTPA and the tort of bad faith apply only to those persons or entities and their agents who are engaged in the business of insurance. In other words, absent a contractual obligation to pay a claim, no bad faith cause of action exists, either at common law or by statute. A self-insured entity is not in the business of insurance.[2] The circuit court did not err by denying the Hawkins' request to amend their complaint to allege unfair trade practices and bad faith against Ford. We affirm the circuit court's ruling on this issue.

■ The Hawkins also contend that the circuit court erred by denying their post-trial motion for attorney fees and costs pursuant to the Magnuson–Moss Act (MMA), 15 U.S.C. § 2310(d)(2) (1975).[3] They admit that "it is unclear whether West Virginia courts require a plaintiff to specifically plead the Magnuson–Moss Act in their Complaint in order for a plaintiff to recover attorney fees under the act[;]" however, they argue that they should recover attorney fees and costs because they prevailed at trial against Ford on a Uniform Commercial Code (UCC) breach of warranty claim and they filed a post-trial motion seeking attorney fees and costs under the MMA. Ford counters that the circuit court correctly denied the Hawkins' post-trial motion for attorney fees because they did not plead or litigate a cause of action which provides for the recovery of costs and fees. Ford admits that the Magnuson–Moss Act allows recovery of attorney fees and costs in certain situations; however, Ford argues that the Hawkins cannot recover under the MMA because they did not plead this cause of action in their complaint. We must determine if a plaintiff can recover attorney fees and costs under the MMA when he or she fails to plead the Act.

"The Magnuson–Moss Warranty Act, 15 U.S.C. § 2310(d)(2) (1975) allows costs and expenses, including attorneys' fees on actual time expended when there is a breach of implied warranty under state law[.]" *Muze-*

---

**2.** This Court's narrow holding in *Korzun v. Chang–Keun Yi*, 207 W.Va. 377, 532 S.E.2d 646 (2000), is distinguishable from the holding in the case *sub judice*. This Court concluded in *Korzun* that "a self-insured automobile rental company qualifies as an 'insurance company' for purposes of accepting service of process on behalf of a nonresident motorist driver pursuant to the provisions of West Virginia Code § 56–3–31." *Id.*, 207 W.Va. at 381, 532 S.E.2d at 650. (Citation omitted). As *Korzun* applies only for procedural purposes, that holding is not affected by the decision we render in this case.

**3.** The Magnuson–Moss Act, 15 U.S.C. § 2310(d)(2) (1975) states:

> If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.

lak v. King Chevrolet, Inc., 179 W.Va. 340, 346, 368 S.E.2d 710, 716 (1988). However, our cases which discuss awards granted under the MMA do not specify whether a plaintiff must plead the MMA before he or she can claim costs and fees under the Act because the plaintiffs in these cases pleaded the MMA in their complaints. See Muzelak, 179 W.Va. at 342, 368 S.E.2d at 712 (1988) ( "[Mrs. Muzelak's] theories of recovery were, inter alia, breach of express warranty, breach of implied warranty of merchantability under the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301(10) (1975), and negligence."); Anderson v. Chrysler Corp., 184 W.Va. 641, 643, 403 S.E.2d 189, 191 (1991) ("[T]he Andersons filed suit alleging five causes of action: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) negligent repair; (4) violation of the Magnuson–Moss Warranty— Federal Trade Commission Improvement Act (Magnuson–Moss Act), 15 U.S.C. § 2301, et seq; and (5) strict liability in tort."); Rice v. Mike Ferrell Ford, Inc., 184 W.Va. 757, 758, 403 S.E.2d 774, 775 (1991) (per curiam), superseded by statute on other grounds as stated in Apple Valley Chevy v. Goodwin, 997 F.Supp. 746 (N.D.W.Va.1998) ("The appellants alleged in their complaint that the appellees had violated the Motor Vehicle Information and Cost Savings Act (Odometer Act), 15 U.S.C. §§ 1981–1991 (1988)[,] the Magnuson–Moss Warranty—Federal Trade Commission Improvement Act (Magnuson– Moss Act), 15 U.S.C. §§ 2301–2312 (1988), and the West Virginia Consumer Credit and Protection Act, W.Va.Code, §§ 46A–1–101 to 6–109 (Supp.1990)[.]").

At first blush, our previous case, City Nat. Bank of Charleston v. Wells, 181 W.Va. 763, 384 S.E.2d 374 (1989), seems instructive, but upon a closer reading, we find that the plaintiff specifically pleaded the MMA. In Wells, Leonard Wells bought a new Toyota truck from Bud Young Toyota, Inc. which was protected by a twelve month/12,500–mile warranty. Almost immediately, the engine began to miss and the truck emitted heavy, blue smoke when driven uphill. Mr. Wells returned the truck several times to the dealership for repairs. The problem was not corrected and Mr. Wells took the truck to an-

other dealership, Tag Galyean Imports, for repairs. Tag Galyean was also unable to correct the smoke emissions. After being told that the truck would not be repaired in the near future, Mr. Wells advised the bank that he intended to cease payments on the truck. The bank finally repossessed the truck and sold it and instituted proceedings against Mr. Wells to collect the deficiency. Mr. Wells filed "a third-party complaint against Toyota, Mid–Atlantic, and the defendant, seeking cancellation of the contract of sale and damages for breach of express and implied warranties under the Uniform Commercial Code (UCC), W.Va.Code, 46–2–101, et seq., and the Magnuson–Moss Warranty— Federal Trade Commission Improvement Act (Magnuson–Moss Act), 15 U.S.C. § 2310 (1975)." Id., 181 W.Va. at 767–68, 384 S.E.2d at 378–79.

The case proceeded to trial and the jury awarded Mr. Wells $10,333.00. Mr. Wells filed post-trial motions seeking prejudgment interest and attorney fees. Both motions were denied. On appeal, this Court concluded "that the trial court erred in rejecting the plaintiff's claim for attorney's fees." Id., 181 W.Va. at 777, 384 S.E.2d at 388. The Court reasoned that the MMA, upon which Mr. Wells relied, allows costs and expenses including attorney fees when there is a breach of warranty under state law. In Syllabus Point 6, the Court held:

A consumer who prevails on a claim for revocation of acceptance and cancellation of a contract of sale in an action for breach of the seller's warranties under the Uniform Commercial Code, W.Va.Code, 46–2– 101, et seq., may recover reasonable attorney's fees under the Magnuson–Moss Warranty—Federal Trade Commission Improvement Act, 15 U.S.C. § 2310(d)(2) (1975).

The facts differ in the case at bar because Hawkins only requested attorney fees and costs under the UCC. They contended that "[a]s a proximate result of the aforesaid negligence and breaches of warranties by Ford, including breach of the implied warranty of merchantability imposed by West Virginia law, plaintiffs are entitled to an award of damages for their legal costs and expenses,

including attorney fees, pursuant to West Virginia Code, § 46–2–101, *et seq.*" At the close of trial, the jury specifically found that the van contained a defective ignition switch which proximately caused and/or contributed to the fire and this defect constituted a breach of an implied warranty by Ford. Posttrial, Hawkins filed a motion seeking attorney fees and costs pursuant to the MMA. The court denied the motion on the basis that the Hawkins failed to assert a claim under the MMA in their complaint.

The United States District Court in *Seybold v. Francis P. Dean, Inc.*, 628 F.Supp. 912 (W.D.Pa.1986), did not believe it was precluded from entertaining a fee application filed pursuant to the MMA even though the pleadings did not contain a claim for relief under the Act. The facts of that case show that Raymond Seybold ordered a Peugeot from Peugeot Motors of America, Inc. through Francis P. Dean, Inc. of Pittsburgh. The vehicle arrived in a defective condition and was never properly repaired despite numerous attempts by various Peugeot dealers in France and the United States. Mr. Seybold filed a lawsuit against the manufacturer and dealership alleging revocation of acceptance under the New Jersey UCC, breach of express warranties, and breach of implied warranties of merchantability. The jury returned a verdict for Mr. Seybold permitting him to revoke acceptance and recover the full purchase price of the car,. $14,260, plus $298 in consequential damages.

The parties raised the issue of attorney fees under the MMA prior to trial in interrogatories. However, the issue was not submitted to the jury. The court heard posttrial arguments on Mr. Seybold's petition to allow attorney fees, expenses, and costs pursuant to the MMA. Upon concluding that Peugeot suffered no undue prejudice by awarding Mr. Seybold attorney fees under the MMA even though the Act was not pleaded in the complaint, the court reasoned:

> The Federal Rules of Civil Procedure and the decisions construing them evince a philosophy that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of his claim at the pleading stage, provided that permitting this relief does not work to the prejudice of the opposing party. Rule 15(b) of the Federal Rules of Civil Procedure provides: "[w]hen issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Under this rule, even if the parties do not consent to trial of an issue beyond the scope of the pleadings, and an objection is made at trial on those grounds, amendment may still be allowed unless the objecting party satisfies the court that he would be prejudiced by the amendment. Prejudice is indicated when the amendment deprives the Defendant of a fair opportunity to defend against the new issues raised and deprives him of the chance to offer additional evidence. This interpretation reflects the purpose of pleadings under the Federal Rules: to give notice to the opposition as to what it must defend against.

*Id.* at 914. (Citations omitted).

Even though the Hawkins did not claim attorney fees under the MMA until after the trial, the issue of attorney fees was raised prior to trial. Ford was put on notice when the lawsuit was initiated that the Hawkins were seeking attorney fees and costs on their breach of warranty claim. The judge told the jury at the close of trial that the "[p]laintiffs, also, allege that they are entitled to damages for their legal costs and attorney fees[.]" The Hawkins premised their claim under the MMA upon the same breach of warranty theory alleged in the complaint. Ford briefed its position regarding the MMA to the court. Moreover, West Virginia Rule of Civil Procedure 54(c) states in pertinent part, "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." This rule supports a finding that it is not necessary for the Hawkins to set forth the specific legal theory upon which they rely for relief as long as they set forth sufficient factual allegations to state a claim showing they are

entitled to any relief which the court may grant. Under the facts presented here, we do not believe that Ford is unduly prejudiced by the Hawkins' failure to plead the MMA claim in their complaint.

■ We, therefore, hold that a consumer who prevails on a claim for breach of an implied warranty of merchantability under the Uniform Commercial Code, W.Va.Code §§ 46–2–101, et seq., may recover reasonable attorney fees under the Magnuson–Moss Act, 15 U.S.C. § 2310(d)(2) (1975).[4] The manufacturer is not unduly prejudiced by the failure to plead the Magnuson–Moss Act as long as the plaintiff sets forth sufficient factual allegations to state a claim showing that he or she is entitled to any relief which the court may grant.

"The Magnuson–Moss Act, 15 U.S.C. § 2310(d)(2) (1974) allows recovery of attorneys' fees for actual time expended on the warranty claims." *Muzelak*, 179 W.Va. at 347, 368 S.E.2d at 717. This Court previously provided guidance as to what constitutes reasonable attorney fees by stating:

> The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Syllabus Point 4, in part, *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986). We reverse the circuit court's denial of attorney fees and costs and remand to the circuit court with directions to award the Hawkins reasonable attorney fees under the Magnuson–Moss Act.

4. We note that attorney fees are also recoverable for breach of implied warranty under W.Va.Code

Affirmed in part; Reversed in part; and Remanded.

McGRAW, Justice, concurring:

(Filed July 3, 2002)

I concur in the decision reached by the majority because I view this as largely a warranty case. An automobile manufactured by Ford was found by a jury to be defective. While I agree that under the facts of this case Ford was not "in the business of insurance," I write separately to suggest that we may well face a situation someday where the UTPA has broader application. When we examined a similar issue with respect to a self-insured freight company, we noted: "[T]he fact that the legislature permits companies to formulate the most efficient insurance coverage should not be misconstrued as a device to avoid liability by the self-retention of risk." *Jackson v. Donahue*, 193 W.Va. 587, 592, 457 S.E.2d 524, 529 (1995) (citation omitted).

In a later case, we again noted that the Legislature's decision to permit self-insurance was not intended to encourage unfair practices after a claim is filed:

> In *Jackson*, this Court recognized that the option to self-insure " 'is a privilege, and it is unimaginable [that] the legislature intended those to whom [West Virginia] grants this privilege would then be able to use it as a shield against liability to the public under circumstances where liability insurance would be required to pay.' " *Id.* at 594, 457 S.E.2d at 531. This Court made clear in *Jackson* that self-insurers are no different than third-party insurers with respect to the insurance coverage they provide. Pivotal to our ruling in *Jackson* was acknowledgment of the following tenet: " '[T]he fact that the legislature permits companies to formulate the most efficient insurance coverage should not be misconstrued as a device to avoid liability by the self-retention of risk.' " *Id.* at 592, 457 S.E.2d at 529 (quoting *Hillegass v. Landwehr*, 176 Wis.2d 76, 499 N.W.2d 652, 655–56 (1993)).

§ 46A–6–108 pursuant to authority granted by W.Va.Code § 46A–5–104.

*Korzun v. Chang–Keun Yi,* 207 W.Va. 377, 379, 532 S.E.2d 646, 648 (2000) (footnote omitted). I should also note that I do not entirely agree with the majority's statement in footnote 2 that *Korzun* "applies only for procedural purposes."

Many large companies are self-insured up to a certain amount, and then carry insurance for sums beyond that amount. I am concerned that a person injured on the premises of a self-insured company might receive dramatically different treatment than a person injured on the premises of an insured company, or that a person with a claim just over the self-insured limit might receive different treatment than one whose claim fell just under that limit.

Presume, for example that large, selfinsured "Company X" is self-insured up to $250,000. Any claim above that limit is covered by the insurer "Mutual of Y." Presume that a patron of Company X is injured by falling merchandise on the company's premises and files a claim for less than the $250,000 self-insured limits. In that case, Company X would investigate the claim, place a value on the claim, and negotiate with an injured party. Presume that another patron is injured in a similar accident, but has more severe injuries and has a claim greater than the $250,000 limits. In this second case, the patron's claim (or at least that portion over the limit) would be handled by "Mutual of Y." Under this scenario, presumably appellee Ford would argue that the second patron would have all the protection of the UTPA, while the first would have none of those protections.[1] While we were not faced with such a case today, such an outcome strikes me as both illogical and unfair.

Finally, I am not convinced by the arguments of counsel to the effect that a decision to apply the UTPA to a large self-insured company would pose any threat to so-called "mom and pop" businesses. In most cases, "mom and pop" either have bought insurance from an insurance company, or have so few assets that a lawsuit against them is unlikely because of the difficulty of a recovery. Par-

ading "mom and pop" before the Court when this case really concerns some of the country's largest corporations is not helpful to our analysis.

Having expressed these limited concerns, I concur with the majority's decision in this case.

The possibility of a disparate outcome for people with near identical injures remains the same.

---

1. One could imagine a similar scenario, except that the second patron is injured in the store next-door, which happens to not be self-insured.